UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBIN KARNO** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 23-7117** |
| **FORD MOTOR CREDIT CO., LLC, ET AL.** | * | **SECTION L** |

## ORDER & REASONS

Before the Court is a Motion for Default Judgment filed by Third Party Plaintiff Ford Motor Credit Company, LLC ("Ford Credit") against Third Party Defendant WUQI Way, LLC ("WUQI"). R. Doc. 63. On April 25, 2025, the Deputy Clerk entered a default against WUQI for its failure to respond to Ford Credit's counterclaim. R. Doc. 60. WUQI's continued unresponsiveness prompted Ford Credit to file the present motion for final default judgment. R. Doc. 63. Having considered Ford Credit's arguments in light of the record of this case and the applicable law, the Court will GRANT Ford Credit's Motion for the following reasons.

**I.   BACKGROUND**

On November 11, 2023, *pro se* litigant Robin Karno ("Karno") filed a Complaint against Ford Credit, alleging that it improperly placed a lien on a vehicle that she believed was her rightful property. R. Doc. 1 at 1-7.[1] Ford Credit filed a timely answer in response and asserted a counterclaim against Karno and corporate entity WUQI that it joined in this matter on October 14, 2024. R. Doc. 42. In its counterclaim, Ford Credit alleges that WUQI purchased a 2019 Ram ProMaster Cargo Van (the "Vehicle") from Lamarque Crescent City Ford LLC on November 17,

---

[1] Karno also sued several credit reporting agencies for making alleged inaccurate reports about matters related to the lien; however, his claims against the defendants have all been dismissed for various reasons and thus are of no import to the present motion. *See* R. Docs. 39, 45, 53, 61.

1

2022. *Id.* at 13-14. In its negotiation with the Ford dealership, WUQI "financed a portion of the purchase price" and executed a Louisiana Vehicle Installment Contract (the "Installment Contract") to acquire the Vehicle. *Id.* at 14. Ford Credit became the assignee of the Installment Contract upon its execution. *Id.* WUQI promised to forward a total amount payable of $68,122.20 across sixty monthly payments ($1,135.37 per month) to Ford Credit. *Id.* at 15. The first payment was due on December 17, 2022. *Id.* The seventeenth of each successive month marked the deadline for the payment. *Id.* Karno acted as guarantor of the execution of the Installment Contract and accepted unconditional liability "for the full amount of debt due under that Contract." *Id.* at 16.

The Installment Contract contains several provisions that outline the consequences of defaulting on a payment. WUQI consented to a Security Agreement that granted Ford Credit a security interest in the Vehicle until WUQI completed its payment plan. *Id* at 15. The Installment Contract stated that Ford Credit could seize and sell the Vehicle upon default on a single payment. *Id.* WUQI agreed to pay a sum worth twenty-five percent of the unpaid balance to compensate Ford Credit's attorneys' fees and legal costs should Ford Credit be forced to take legal action. *Id.* In the event of a default, Ford Credit could force WUQI to forward all unpaid remittances specified in the Installment Contract. *Id.* at 16.

Ford Credit asserts that WUQI failed to pay the $1,135.37 due on September 17, 2023, and neglected to make any subsequent payment. *Id.* Ford now seeks a remaining balance of $49,259.45, plus interest, attorneys' fees, and costs. R. Doc. 63 at 1.

Ford Credit served Malcolm Breaux, WUQI's designated agent, the summons on October 18, 2024. R. Doc. 50 at 2. However, WUQI filed no responsive pleadings within the twenty-one-day cap after receiving the summons. R. Doc. 58 at 1-2. As a result of this omission, Ford Credit filed a Motion for Entry of Default with an attached affidavit that noted WUQI's unresponsiveness

on March 25, 2025. *Id.* at 3, R. Doc. 58-1. The Deputy Clerk subsequently entered the default. R. Doc. 60. After reminding Karno that, pursuant to 28 U.S.C. § 1654, she cannot represent corporate entity WUQI as a lay person, the Court ordered Karno to obtain counsel for WUQI within thirty days. R. Doc. 67. That deadline has passed.

## II.   PRESENT MOTION

Ford Credit seeks a final default judgment against WUQI as a consequence of its unresponsiveness to the counterclaim. R. Doc. 63 at 1. Ford Credit has attached in support an Affidavit detailing the transaction between WUQI and Ford Credit and the terms and conditions of the Installment Contract, the Installment Contract at issue, and a verified report of attorneys' fees that have been expended on this case. R. Docs. 63-2, 63-3, 63-4. Ford Credit adhered to the procedural requirements outlined in Rule 55(a) of Federal Civil Procedure for filing a Motion for Default. R. Doc. 58, Fed. R. Civ. P. 55(a). Entry of the default by the clerk is also proper under these guidelines. R. Doc. 60, Fed. R. Civ. P. 55(a.). Ford Credit seeks to recover the balance of outstanding debt, attorneys' fees, and costs derived from the prosecution of this case. R. Doc. 63 at 1-2. WUQI has filed no response to Ford Credit's motion.

## III.   APPLICABLE LAW

To attain a default judgment, a plaintiff must first file a Motion for Entry of Default. Fed. R. Civ. P. 55(a). He must attach an affidavit that notes the facts of the defendant's "fail[ure] to plead or otherwise defend" before submitting the motion to the court clerk. *Id*. The court clerk must enter the default when the plaintiff's documentation is in order. *Id.* To file a Motion for Default Judgment, the plaintiff must submit "an affidavit showing the amount due" to recover a claim of "a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). If the claim is not for this type of remedy, the petitioner "must apply to the court for a default

3

judgment." Fed R. Civ. P. 55(b)(2). Although the court must accept the plaintiff's allegations against the defendant as truthful, it is not obliged to recognize the amount of damages sought as fact. *U.S. For Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

Regardless of a defendant's default, the petitioner "is not entitled to a default judgment as a matter of right." *Gather v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). The district judge possesses the discretionary authority to enter a default judgment. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). To determine whether to enter a default judgment, the Court must consider "1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 4:16-cv-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *Nishimatsu Constr. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The plaintiff and the Court, respectively, must undertake two assessments to satisfy the first prong of the analysis. First, the plaintiff must make "a prima facie showing" that the Court possesses personal and subject matter jurisdiction over the defendant in default. *Viahart, LLC v. Does 1-54*, No. 18-604, 2021 WL 777083, at *3 (E.D. Tex. Jan. 29, 2021). Next, the Court undertakes a six-step test to determine the necessity of the default judgment. *Lindsey*, 161 F.3d at 893. The Court must decide "(1) whether material issues of fact are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.*

To fulfill the requirements of the second prong of the analysis, the Court must ensure that

the plaintiff's pleading adheres to the requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015). Although the defendant's default marks its admission to the plaintiff's allegations, the Court cannot enter a default judgment without finding a sufficient factual basis within the pleading. *Nishimatsu Constr. Co.,* 515 F.2d at 1206. The pleading must first contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Second, the facts within the complaint must "'raise a right to relief above the speculative level' and into the 'realm of plausible liability.'" *Viahart*, 2021 WL 777083, at *4 (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 557 n.5 (2007)).

Finally, the Court must determine the amount of damages owed to the plaintiff to fulfill the third prong of the analysis. Rule 55(b)(2) of the Federal Rules of Civil Procedure states that a "court may conduct hearings. . .when, to enter of effectuate judgment, it needs to. . .determine the amount of damages." Fed. R. Civ. P. 55(b)(2). This clause confers a broad discretionary authority to the district court. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). No hearing need be conducted when the plaintiff seeks liquidated or calculable damages rather than unliquidated damages. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

    **IV.**    **ANALYSIS**

    **A. Default Judgment is Procedurally Proper.**

To obtain a default judgment, the plaintiff must first make a prima facie showing that the Court has personal and subject matter jurisdiction. *See Viahart*, 2021 WL 777083, at *3. As to subject matter jurisdiction, the Court has asserted supplemental jurisdiction over this case. R. Doc. 55 at 3-4. Karno originally filed suit against Ford Credit for violating the Fair Credit Reporting Act. R. Doc. 1 at 1, 8; R. Doc 54 at 2. His claims are still pending. Because his claim arises under

federal law, Ford Credit averred that the Court possessed supplemental jurisdiction over its counterclaim and joinder because "the claims of this counterclaim are so related to the claims of the principal demand that they all form parts of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1331, R. Doc. 42 at 14.

The Court agreed with Ford Credit's argument. R. Doc. 55 at 3-4. Concerning personal jurisdiction, WUQI established minimum contacts with the state when it set up its principal office and mailing address in Louisiana and purchased the Vehicle from Lamarque Crescent City Ford LLC. R. Doc. 42 at 13-14; *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *see also WNS, Inc. v. Farrow*, 884 F.3d 200, 204 (5th Cir. 1989) (ruling that a Texas state court possessed personal jurisdiction over Georgia residents who had travelled to Houston for business meetings with a franchisor before sending the franchisor several payments through the mail).

The movant must then show that he has followed the correct procedure to obtain a default judgment. If a party fails to plead or otherwise defend after being served, the serving party is entitled to entry of a default by the Clerk of the Court. Fed. R. Civ. P. 55(a). Following entry of the Clerk's default, the Court may enter a final default judgment. Fed. R. Civ. P. 55(b). Here, WUQI was properly served by Court Order. R. Doc. 50 at 2. A preliminary order of default has been entered against it. R. Doc. 58-2. Accordingly, the case is procedurally postured for an order of final default.

Finally, the Court must determine whether a default judgment is warranted. The Fifth Circuit considers the following six factors in determining whether a default judgment is necessary: "(1) whether material issues of fact are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether

6

the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893. Here, these factors support an entry of a default judgment against WUQI.

Because WUQI has defaulted by failing to appeal, the Court accepts Ford Credit's allegations as true. *See Nishimatsu*, 515 F.2d at 1206. Accordingly, there are no material issues of fact that would preclude default judgment. Ford Credit has been prejudiced by WUQI's failure to appear because Ford Credit seeks to recover damages from the unresponsive party. R. Doc. 63 at 1-2. WUQI's failure to answer or appear establishes grounds for default. There is no evidence or argument that WUQI's unresponsiveness is the result of a good faith mistake or excusable neglect. *See Viahart*, 2021 WL 777083, at *3. A default judgment would not be unusually harsh under these circumstances. *See id.* Finally, there is no basis to expect that a default judgment would need to be set aside. Accordingly, the Court finds that Plaintiff has demonstrated that a default judgment is warranted.

### B. Ford Credit Has Pled Sufficient Facts to Show Entitlement to Default

Ford Credit seeks a default judgment to recover monetary relief and to receive recognition of the validity of its security interest in the Vehicle. R. Doc. 63 at 2-3. For a claim to be considered plausible, a complaint must contain "a short and plain statement of the claim showing that the leader is entitled to relief" and include facts that "raise a right to relief above the speculative level" and into the realm of plausible liability." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp.*, 550 U.S. at 555, 557 n.5. The Court must accept a plaintiff's well-pleaded allegations as true. *See Nishimatsu*, 515 F.2d at 1206. In its counterclaim, Ford Credit recounted the transaction between itself, WUQI, and Karno and outlined the clauses within the Installment Contract that provided it with a security interest and an entitlement to recover financial relief in the event of a default on a payment. R. Doc. 42 at 14-16. Ford Credit also submitted as an exhibit Installment Contract, which further

supports its claims against WUQI. R. Doc. 63-3. Accordingly, the Court finds that Ford Credit has pled sufficient facts to show entitlement to default.

### C. Ford Credit is Entitled to Relief.

Although the Court must accept the veracity of Ford Credit's well-pleaded allegations, it is not obligated to take the amount of requested damages as fact. *U.S. For Use of M-CO, Const., Inc.*, 814 F.2d at 1014. It is upon the Court "to fix the amount of damages" as it sees fit. *Wright v. E-Sys., LLC*, No. 12-4715, 2016 WL 7802996, at *2 (N.D. Tex. Dec. 20, 2016). Here, Ford Credit provided the Installment Contract, which contains a table outlining the payment plan and amount due, along with a verified report of attorneys' fees. R. Docs. 63-3, 63-4. However, Ford Credit has stated different amounts payable in its counterclaim and in its motion for default judgment.[2] R. Docs. 42 at 14, 63 at 2. Ford Credit has also not provided the total amount of relief sought. Instead, it noted that the interest rate on the unpaid balance was 13.69% per annum and that attorneys' fees were limited at twenty-five percent of the amount payable. R. Doc. 63-2 at 2-4. The final amount sought is thus ascertainable through computation. *See* Fed. R. Civ. P. 55(b)(1).

When the petitioner seeks calculable damages, the district court is not obligated to conduct an evidentiary hearing. *United Artists Corp.*, 605 F.2d at 857. However, the Court still possesses the discretionary authority to order an evidentiary hearing to calculate the amount of damages the petitioner deserves. *James*, 6 F.3d at 310 (interpreting Fed. R. Civ. P. 55(b)(2)). In the instant case, the Court will exercise its discretion to do so. As noted above, Ford Credit has requested two different amounts payable. R. Docs. 42 at 14, 63 at 2.[3] Although Ford Credit provided the terms to calculate the final amount of relief sought, the products would differ as a result of the discrepant

---

[2] $50,696.20 and $49,259.45, respectively. R. Docs. 42 at 14, 63 at 2.
[3] The interest rate and the attorneys' fees cap have remained consistent. These terms can be found in the Installment Contract. R. Doc. 63-3.

8

amounts payable provided. R. Doc. 63-2 at 3-4.

Additionally, the Court will conduct an evidentiary hearing to provide Ford Credit with the opportunity to explain the provisions within the Installment Contract that dictate the relief that it can recover. As of June 17, 2025, Ford Credit reported spending upwards of $20,000 on attorneys' fees. *Id.*, R. Doc. 63-4 at 3. This expense exceeds the stipulated amount defined in the Installment Contract as the appropriate recompense for attorneys' fees. R. Doc. 63 at 2 n.1. Ford Credit seeks the total amount of attorneys' fees that the terms of the Installment Contract allow. *Id.* Ford Credit provided the mathematical terms to find the final amount, but the attorneys' fees would vary as a result of the differing amounts payable. R. Docs. 42 at 14, 63 at 2, 63-2 at 2-4. An evidentiary hearing is necessary to determine the quantum of the default judgment the Court now enters in favor of Ford Credit.

### V.    Conclusion

For the foregoing reasons;

**IT IS ORDERED** that Ford Credit's motion, R. Doc. 63, is **GRANTED**. The Court finds that Ford Credit is entitled to a default judgment against WUQI. An evidentiary hearing to determine quantum will be held before the Honorable Eldon E. Fallon on <u>Wednesday, November 5, 2025, at 9:00 A.M.</u>

New Orleans, Louisiana, this 10th day of September, 2025.

Cc: Ms. Robin Karno
1031 Hawk Crest Lane
Ellington, MO 63638

_____
United States District Judge

9